## Stephens, By, &c. v. Stephens, et al.

(Decided December 15, 1916.)

## Appeal from Pike Circuit Court.

1. Explosives—Duty to Exercise Reasonable Care in Handling.—It is the duty of one keeping or storing dynamite or other explosives upon his premises to exercise reasonable care that they be not exposed or so stored or kept as that they may be accessible to children or persons of immature age who may rightfully be upon the premises, or who may trespass upon the premises, if the one storing the explosive has knowledge that such trespasses have theretofore been committed or are liable to be committed through the childish or immature instincts of the trespasser.

2. Explosives—Injuries From Accidental Explosion.—The negligence of the one storing the explosive should be, in order to hold him liable, the proximate cause of any consequent injury, and he will not be liable if there is any intervening responsible cause between his act of negligence and such injury.

3. Explosives—Proximate Cause.—Proximate cause is one which a natural sequence, uninterrupted by any independent cause, produces the result complained of, and this is not affected by a continuity of events not amounting to an independent cause between the original act and the injury, or as to the time intervening between the two.

4. Explosives—Proximate Cause.—Where a boy "about 14 years of age" obtained dynamite caps from the premises where stored under such circumstances as would make the storer of the caps negligent, and he afterwards delivered them to another who was incapable of appreciating the danger and who sustained injuries by a subsequent explosion, it will not be presumed, in the absence of an allegation to the contrary, that the 14-year-old boy was incapable of appreciating the danger because of his age alone, or that his acts did not constitute an independent cause and therefore the proximate cause of the injury, relieving the negligence of the storer of the dynamite of being the proximate cause of the injury.

J. S. CLINE for appellants.

ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS.—Affirming.

Appellant, Malcom Stephens, an infant 11 years of age, attended with his mother an apple-peeling given at the home of appellees, William Stephens and wife, Warena Stephens. William and Warena Stephens were

the parents of a son, Whetzell Stephens, who is alleged to be "about 14 years of age."

While in attendance upon the apple-peeling, according to the petition, Whetzell Stephens gave to the appellant some dynamite caps, and informed him at the time that they were empty cartridge hulls, and the appellant, Malcom Stephens, believing them to be such, took them, and afterwards, in handling them, one exploded, tearing away three fingers from his hand.

Conceiving that the parents of Whetzell Stephens were guilty of such negligence as to render them liable for the damages sustained by the injury, the appellant by his step-father as his next friend, filed this suit against William and Warena Stephens to recover the sum of $3,000.00. A demurrer was sustained to the petition, after which it was amended, a demurrer sustained to it as amended, and plaintiff declining to plead further, his action was dismissed, and to reverse the judgment this appeal is prosecuted.

In setting up his cause of action, the plaintiff in his petition says:

"That the injuries to plaintiff were caused by the gross carelessness and negligence of the defendants, Williams and Warena Stephens, and Whetzell Stephens, their son, in the care of the said dynamite caps. That the defendants did not exercise the proper degree of care in keeping the said dynamite caps; that they recklessly permitted their son to use and handle the said dynamite caps, well knowing of their high explosive nature, and permitted the said dynamite caps to be handled recklessly and wantonly about their home, when, in fact, they well knew of the high explosive character of the said dynamite caps, well knowing that children, or even members of their own family, would obtain possession of said caps, and be injured thereby."

Further along in the petition it is stated that the defendants failed to "take reasonable or proper precaution so that innocent, inexperienced persons would not be injured thereby; that said dynamite caps were recklessly handled at the home of defendants, and that defendants permitted their said son, Whetzell Stephens, to obtain possession of said dynamite caps and give them to the plaintiff aforesaid." It is also stated that the defendants knew of the explosive nature of the dynamite caps, and of the fact that they kept them in their residence, and

with this knowledge permitted the caps to get into possession of their son.

The amended petition stated that appellees knew that their son had possession of said caps and that they "had said caps in a trunk, and well knowing of their dangerous character and attractiveness to children, left the trunk unlocked, and by their negligence made it possible for their son and other children to get possession thereof."

The question presented by the demurrer is whether the petition as amended stated a cause of action in favor of plaintiff against the parents of Whetzell Stephens. The rule with reference to the care which should be exercised in the storing and keeping of dangerous explosives upon or about one's premises so as to prevent injury or damage to one rightfully upon the premises and who may not know of or fully appreciate the danger of handling them is well settled. Generally stated, for the protection of mature and responsible persons, as well as immature and irresponsible ones, it is that "He (the person keeping the dynamite) must exercise care for the safety of persons invited thereon (his premises); and he may be liable if he negligently leaves explosives on the premises that may result in injury to any person not a trespasser." 17 R. C. L. 664. But for the protection of infants who are shown, either because of their age or other evidence, to be unable to appreciate the danger in handling explosives, whether such person be invitee, licensee or trespasser, the rule is stated in the same book and page, *supra,* to be:

"As a general rule a person leaving exposed and unguarded on his premises an explosive which is found by trespassing children is liable for any injuries resulting from its explosion. This rule is based on the very natural and reasonable assumption that children, wherever they go, must be expected to act upon childish instincts and impulses; and those who are chargeable with a duty of care and caution towards them, must calculate upon this, and take precautions accordingly. If persons leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, such persons should expect that liberty to be taken."

But if the injured person is a trespasser, and of the class who is unable to appreciate the danger of handling the explosive, it would be necessary, in order to make

the defendant responsible, that he should have knowledge of the fact that such trespasses were habitually committed upon his premises at the place where he kept or stored the explosive or that the premises were so attractive as naturally to invite that class of trespassers. These rules have been fully sanctioned by this court in the cases of Ball v. Middlesboro T. & L. Co., 24 Ky. Law Rep. 114; Miller v. Chandler, 163 Ky. 301, and same case 168 Ky. 606.

The reason for the rule as applicable to immature infants, on account of whose age they may be presumed to be incapable of appreciating the danger, or as to others who may be actually shown to be so unable, is stated by this court in the case of Bransom's Admr. v. Labrot, 81 Ky. 638, which is referred to and approved in the two Miller cases above mentioned, as follows:

"The rule adopted by this learned author (Thompson on Negligence) is that where the owner of the premises creates or brings thereon any dangerous thing, which, from its nature, has a tendency to attract the childish instincts of children to play with it, he is bound, as a matter of social duty, to take such reasonable precautions as the circumstances admit of to protect them from injury while playing with it, or in its vicinity."

To the doctrine as thus found in the text book, as well as the opinions of this court, we still adhere, but the question presented in this case is whether the allegations of the petition as amended, having reference to the law of negligence relative to proximate cause, are sufficent to show liability on the part of appellees, the parents of Whetzell Stephens.

In discusing this question it becomes necessary to as briefly as possible inquire into the legal meaning of "proximate cause." Speaking generally, a proximate cause is one which alone produced the injury complained of, and which was not superseded in the production of such injury by a succeeding, intervening cause which itself is in law responsible for the injury. The injury must be a natural sequence of the wrong complained of, and if it naturally results from such act, the latter will be considered to be the proximate cause of the injury, although there may have been a train of occurrences intervening between the commission of the wrong and the happening of the injury. But if the intervening occurrences or acts are such as to be themselves responsible for the injury, or

to break the chain of sequence, the original act will not be considered the proximate but the remote cause, and for which no liability results.

Upon the question now under consideration as applicable to handling of explosives, in 11 R. C. L., page 666, it is said:

"Independent acts of intelligent, responsible human beings, of such degree and character as would break the chain of sequence, may so insulate the owner's original negligence as to make it the remote and not the proximate cause of the injury."

In 29 Cyc. 499, it is said:

"But an intervening case will be regarded as the proximate cause, and the first cause as too remote where the chain of events is so broken that they become independent and the result cannot be said to be the natural and probable consequence of the primary cause. The law will not look back from the injurious consequences beyond the last efficient cause, especially where an intelligent and responsible human being has intervened."

In the notes to this text will be found cases from the courts of most of the states, as well as from other jurisdictions. So the question is, will the court presume that a 14-year-old boy, as was the son of appellees, is not "an intelligent and responsible human being" whose acts, according to the allegations of the petition, intervened between the negligence of his parents complained of and the injury to the appellant, so as not to relieve them by reason of the boy's acts being an intervening and proximate cause of the injury?

We are aware that in this state, and generally there are certain presumptions which the courts will indulge as to the criminal responsiblility of infants. These presumptions, without referring to the cases, are: (1) That an infant under 7 years of age is conclusively presumed to be incapable of committing crime. (2) That between 7 and 14 years of age he is *prima facie* presumed to be incapable of committing crime, but this presumption may be overcome by proof to the contrary. (3) That between the ages of 14 and 21 years he is *prima facie* presumed to be capable of committing crime, but which presumption he may rebut with testimony. We find no such presumptions as to either the capability or liability of infants in the commission of pure torts, such as was committed by the son of appellees complained of in this case. On the contrary,

the law of this state, as well as elsewhere, is that an infant is civilly liable for his torts unconnected with his contract, unless in the commission of the tort there is required to exist some element which the infant is not presumed to possess. Of the latter class is an action for slander, wherein malice is a necessary ingredient, and if the infant, under the presumptions stated with reference to his commission of crime, cannot be presumed to be guilty of malice, no liability attaches for his slanderous utterances. Cases from this court sustaining these propositions are Chandler v. Commonwealth, 4 Metcalfe 66; Drane v. Pawley, 8 Ky. Law Rep. 530. An interesting discussion as to the civil liability of infants for pure torts is found in the notes to the case of Lowery v. Cate, 57 L. R. A. 673. Among the cases found in the note is Neale v. Gillette, 23 Conn. 437, where the injury for which the infants were sued was produced by them throwing a ball so near the head of plaintiff's horse as to cause him to become frightened and to injure the plaintiff. One of the defendants was 13 and the other 16 years of age. In holding them liable, the court said

"Persons of the age of 13 years or more must be considered, in the absence of proof to the contrary, as emancipated from childish instincts, and bound to exercise their rights with ordinary care."

Other cases somewhat analogous in principle are O'Brien v. Loomis, 43 Mo. App. 29; Hutching v. Engel, 17 Wis. 230; 84 Am. Dec. 741; Conklin v. Thompson, 29 Bard 218; Edwards v. Crume, 13 Kan. 348.

In order to hold the petition in this case good it must be presumed, in the absence of an allegation, that the son of appellees, because he was only "about 14 years of age" was not possessed of sufficient discretion as to appreciate the danger of handling dynamite caps, and that because of his age alone his acts in giving the caps to the appellant was not an intervening cause between the alleged negligent acts of the appellees and plaintiff's injury. In other words, we are called upon to state as a matter of law that an infant "about 14 years of age" will be presumed incapable of committing negligence by delivering to another infant dynamite caps. While fully recognizing the necessity of a strict application of the rule which we have herein discussed in order to protect the innocent and unsuspecting, we are not prepared to give our sanction to such an arbitrary presumption as we would be compelled to indulge in order to hold the appellees liable

under the allegations of the petition. To illustrate, suppose that the caps in this case were shown to have been delivered to appellant by one shown by the pleading to have been an adult, and he obtained them in the same way on appellees' premises as did Whetzell Stephens and no charge was made that such adult person, on account of mental weakness or other reasons, was incapacitated to and did not appreciate the danger; could it be said that appellees incurred liability to one to whom the adult delivered some of the caps and who was injured by a subsequent explosion? We are clearly convinced that no court would hold the owner or occupant of the premises where the explosives were stored, or the one storing them, liable under such circumstances, for the reason that the part played by the adult in delivering the explosives to the one injured would be an intervening cause between the acts of the storer of the explosives and the injury, and a responsible one in the absence of a contrary showing.

The intervening cause which will not defeat the original cause from being the primary or proximate one must be no cause in the eyes of the law, and we are unwilling to say in the absence of an allegation to the contrary, that the intervening acts of a boy "about 14 years old" constitute no cause in the eyes of the law because of the boy's age alone, when the same intervening acts would be a responsible and therefore a proximate cause so as to excuse, as being too remote, a prior cause for a consequent injury if such intervening acts had been committed by an acknowledged competent person. We do not feel authorized to hold that one, even a parent, must anticipate that an infant as much as "about 14 years old" will not, because of presumed immature judgment from the fact of his age, appreciate the danger of handling dynamite caps, if known by him to be such, or that he will negligently give them to others of recognized immature judgment, and for a failure to do so becomes liable in damages for all consequential injuries.

If it had been alleged that Whetzell Stephens, on account of his age and mental development, was incapable of appreciating the danger of handling the dynamite caps, and that his parents knew this, but, notwithstanding, permitted him to do so, and to keep them where he had access to them, and that he in this way obtained them and delivered them to the appellant, not knowing or appreciat-

ing the danger, then a cause of action undoubtedly would have been stated. Without it, the pleading of the plaintiff is faulty, and the court properly sustained a demurrer to it.

Wherefore, the judgment is affirmed.